## AB HOPKINS v. THE STATE.

### No. 968.    Decided February 22, 1911.

### Rehearing Denied March 22, 1911.

**1.—Burglary—Statement of Facts—Agreement of Attorneys—Certificate.**

Where upon appeal from a conviction of burglary, the court's approval of the statement of facts stated that it was full and complete, the same was sufficient although the trial judge did not specifically certify that the attorneys failed to agree. Following Brown v. State, 56 Texas Crim Rep., 87, and other cases.

### 2.—Same—Newly Discovered Evidence.

Where, upon appeal from a conviction of burglary, it appeared from the record that the alleged newly discovered evidence, set up in defendant's motion for new trial, was simply of an impeaching character, there was no error in overruling his motion.

### 3.—Same—Private Residence—Indictment of Several Counts.

Where, upon trial of burglary, the first count charged an assault with intent to murder, and the second count charged a burglary with intent to kill, under article 838, Penal Code, and the third count charged the burglary of a private residence at night with intent to kill, under article 839a, Penal Code, and the court submitted the second count only, there was no reversible error because the third count in the indictment was defective in not alleging that the house was occupied and actually used as a private residence.

### 4.—Same—Private Residence—Ordinary Burglary—Statutes Construed.

Where, upon trial of burglary under different counts in the indictment, one charging an ordinary burglary and the other charging a burglary at night of a private residence, the evidence was of such character as might have tended to show that the defendant was guilty of burglary of a private residence at night, but also showed that defendant was guilty of ordinary burglary, a conviction of the latter offense will not be disturbed, as defendant could not complain of the lower penalty imposed.

### 5.—Same—Private Residence—Charge of Court.

Where, upon trial of burglary under different counts, one alleging ordinary burglary and the other burglary of a private residence at night, the evidence did not clearly show that the house burglarized was occupied and used at the time of the commission of the offense by the alleged occupant as a place of residence, there was no error in the court's charge in submitting the law applicable to an ordinary burglary under that count of the indictment.

Appeal from the District Court of Jefferson. Tried below before the Hon. L. B. Hightower, Jr.

Appeal from a conviction of burglary; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*McDowell & McDowell,* for appellant.—Counsel in their brief stated that they had no connection with the case until some time after the trial thereof, and after the alleged motion for new trial had been overruled.

Upon the question of the court's charge limiting the trial to the second count in the indictment, and that he should have submitted burglary of a private residence: Osborne v. State, 42 Texas Crim. Rep., 557, 61 S. W. Rep., 491; Cleland v. State, id., 492; Fonville v. State, 62 S. W. Rep., 573; Williams v. State, 42 Texas Crim. Rep., 602, id., 1057; Jones v. State, 80 S. W. Rep., 530; Gilford v. State, 48 Texas Crim. Rep., 312, 87 S. W. Rep., 698; Reyes v. State, 51 Texas Crim. Rep., 420, 102 S. W. Rep., 421.

On question of the meaning of a private residence: Lehman v. McBride, 15 Ohio St., 573; Tyler v. Murray, 57 Md., 418; 14 Cyc., 834.

On the question that the court must submit every issuable fact:

Schwartz v. State, 53 Texas Crim. Rep., 449, 111 S. W. Rep., 399; Williams v. State, 58 S. E. Rep., 549.

C. E. Lane, Assistant Attorney-General, for the State.—On the question of statement of facts not being sufficient to show that attorneys disagreed: Hess v. State, 30 Texas Crim. App., 477; Morse v. State, 39 Texas Crim. Rep., 566.

PRENDERGAST, JUDGE.—The appellant in this case was indicted for burglary with intent to murder. The indictment was in three counts. The first charged an assault with intent to kill; the second charged burglary at night with intent to kill, under article 838, Penal Code; the third charged burglary at night of a private residence with intent to kill, under article 839a, Penal Code. After all of the evidence was in the court by its charge expressly withdrew the first and third counts in the indictment from the jury, and charged them only on the second. Appellant was found guilty and his punishment assessed at four years confinement in the penitentiary.

1. The State has made a motion to strike out the statement of facts in this case on the ground that it shows that it was made up by the official court stenographer without being passed upon by the attorneys, and the approval of the judge does not state that he made up the statement because of the disagreement of the attorneys. The approval and certificate of the judge is as follows: "The foregoing statement of facts is by me approved as a full and complete statement of all facts proved on the trial of the above numbered and styled cause." While he does not specifically certify that the attorneys failed to agree, he does certify that it is a full and complete statement of the facts. This, in our opinion, is a sufficient authentication of the statement of facts, and justifies us in holding that the judge so made it because the attorneys did not agree. The authorities, we think, so hold. Brown v. State, 56 Texas Crim. App., 87; Lozano v. State, 81 S. W. Rep., 37. See also Morris v. State, 39 Texas Crim. Rep., 566. We, therefore, overrule the State's motion to strike out the statement of facts.

2. There are no bills of exception, and the motion for new trial sets up nothing that can be considered otherwise than by bills of exception, except what we will hereafter notice.

By the motion for new trial it is claimed that new evidence is discovered, shown by the affidavit of Mrs. Haynes attached thereto, and complained that the court erred in overruling the motion for new trial on that ground. The affidavit of Mrs. Haynes attached at most is only of statements to her made by the complaining witness, Mattie Montgomery, and could only be for the purpose of impeaching Mattie Montgomery. It is too well settled to need citation of authorities to show that there was no error in overruling the motion for a new trial on that ground.

3. The only other questions presented by the motion for new trial and necessary to be noticed are as follows: (1) "Because the verdict of the jury is contrary to the evidence," and (2) "because the verdict of the jury is contrary to the law and not supported by the evidence."

Under this it is insisted by appellant that we should consider the charge of the court in limiting the jury to the consideration of count No. 2 in the indictment, and that it is fundamental error for the court to have charged the jury under that count in the indictment instead of under the third count, claiming that the evidence clearly shows that the burglary with intent to murder was committed, if so, by the defendant in a private residence, and that the evidence clearly showing this requires a reversal of the judgment.

By the Act of June 5, 1899, page 318, burglary of a private residence is made a separate and distinct offense from burglary under articles 838-9 of the Penal Code. By article 845c of that Act a private residence is defined and says that a private residence "shall be construed to mean any building or room occupied and actually used at the time of the offense by any person or persons as a place of residence." This court has repeatedly held that in an indictment under this Act it is necessary to allege that the building is *occupied and actually used as a residence* at the time of the offense by some person or persons, and that it is necessary in the indictment to charge by what person it is so occupied and actually used as a residence. And as it is necessary to allege this, it is also necessary to prove it. Lewis v. State, 54 Texas Crim. Rep., 636; Jones v. State, 50 Texas Crim. Rep., 100; Johnson v. State, 50 Texas Crim. Rep., 116.

The evidence in this case, without reciting it in full, clearly shows that on or about the night of November 19, 1909, Mattie Montgomery, designated the complaining witness, gave a church supper to raise money for a church at "her house" or "home," to which the appellant and others came. That while the defendant was there sitting in the kitchen at a table eating, Cy Booker, a negro boy, came into the kitchen, when the appellant at once began to abuse and assault him, and did actually strike him on the head with a glass, cutting his head; that there was no occasion whatever for his doing so other than that some time during the evening preceding this the appellant claimed that the boy had "sassed" him and talked ugly to him when he (the boy) approached him to have him pay some money that he was due, and that he was mad at him on that account. The boy ran out of his presence after being struck, and appellant at once left Mattie Montgomery's house, stating that he would get a gun and kill Cy Booker. That he at once left this house and went to his home, which was nearby, procured a double-barrel shotgun and at once returned to Mattie Montgomery's. As soon as he left, Mattie Montgomery and others closed up the house and fastened the doors, fearing that the appellant would return and carry out his threat. He very

soon did return with a double-barrel shotgun. Finding the house closed, he burst the kitchen door open by throwing his force and person against the door and thus entered the kitchen, seeking Cy Booker, declaring that he would kill him. As he burst in the back door and entered, Cy Booker was ushered out at the front door and ran away as rapidly as he could. The appellant was caught, and the gun also caught by Mattie Montgomery and others, and was attempted to be restrained and held to prevent him carrying out his threat to kill Cy Booker. Afterwards other persons came up, and while they were struggling with him his gun was taken from him. Cy Booker had then escaped, and the appellant was taken away, and made no further attempt to carry out his threat. The evidence is clear, establishing beyond doubt the charge as alleged against the appellant of burglary with intent to kill, as could well be.

However, the appellant claims, as stated above, that the proof showed that the burglary was committed in a private residence, and that the case must be reversed because the proof clearly shows this.

There is no direct proof that the house that was thus burglarized by the appellant was occupied and actually used at the time of the offense by Mattie Montgomery as her place of residence, or as a place of residence by any other. The evidence claimed to establish this by the appellant contains such general expressions as the following:

By Cy Booker: "I now live with Mrs. Montgomery. About the 19th day of November, 1909, I lived with Mrs. Montgomery, on Ninth Street, in Port Arthur. I had rented a back room with the lady and I had to go through to go to bed" (this at the time he was first assaulted by the appellant).

By the witness Mattie Montgomery: "I live in Port Arthur. I was at home the night the defendant raised some disturbance at my house. . . . The supper was at my house—the entertainment for the church. . . . I slammed the back door and fastened it and went to my front room to get something to put on the boy's head (meaning Cy Booker); the front was fastened, the screens were hooked, but the door was not locked. All around the house was closed up. He didn't stay no time (meaning appellant), because he didn't live no ways. . . . Hopkins (appellant) run in the kitchen, and after he got in the kitchen and heard him (Cy Booker) getting out of the door so fast he turned around. . . . That was my house; I occupied that house; I did not give him my consent to break into that house."

By the witness Fannie Faughtner: "I was at Mattie Montgomery's house the night that Ab Hopkins broke in there and tried to kill this boy."

By Albert Hadnot, after stating he helped take the gun from appellant, and that appellant broke the door open, he states: "I heard the lady of the house holloing, 'He is going to shoot,' and I went out there. . . . Defendant was sitting at the table eating. The table

was in the shed-room part of the house; they call it the kitchen. Defendant lives next door to the witness Montgomery's house."

There are some other like expressions of the various witnesses unnecessary to here state, and the further fact that the house was shown to have three rooms, a front room, another room and a kitchen.

From all this we conclude that this evidence does not necessarily nor clearly show that the house burglarized was *occupied and used at the time of the commission of the offense by Mattie Montgomery as a place of residence.* The fact, if it be conceded, that Cy Booker, the party attempted to be killed, had rented a back room in Mattie Montgomery's house, and that one room was designated the kitchen, and that she herself stated that she "occupied" the house and that she designated it her "home," by no means would clearly show that it was occupied by her and actually used by her at the time of the offense as the place of her residence. It could just as well have been occupied by her as a restaurant, boarding or rooming-house or for other purposes as for her residence, so far as shown by this testimony. By being "occupied" by her would by no means necessarily mean that it was her actual place of residence.

Under all the facts and circumstances, as clearly shown by this record, it is our opinion that the court did not commit reversible error by submitting only the second count of the indictment and in not submitting the case under the third count, making the offense one of committing burglary of a residence.

There being no reversible error in the record, the judgment is in all things affirmed.

*Affirmed.*

ON REHEARING.

March 22, 1911.

PRENDERGAST, JUDGE.—By appellant's motion for rehearing herein, he urges that the evidence in the case shows, or tends to show that the house burglarized was the residence of the witness Montgomery, "occupied and used at the time of the commission of the offense by Mattie Montgomery, as her place of residence." He does not contend that the evidence is insufficient, under the second count, that the house burglarized was occupied by Mattie Montgomery, under articles 838-9, for the evidence clearly and without doubt establishes the guilt of the appellant under that count of the indictment. Article 845, Penal Code, fixes the penalty for burglary, under articles 838-9, at confinement in the penitentiary not less than two nor more than twelve years. Article 845a fixes the penalty for burglary under article 839a at imprisonment for any term not less than five years. It is not sufficient to justify this court to reverse to show that the testimony may have tended to show that the offense was under article 839a, when it also clearly shows that it was committed under articles 838-9.

This was clearly to the advantage of the appellant and not to his disadvantage. As said by this court, through Judge Hurt, in the case of Thompson v. State, 37 Texas Crim. Rep., 227:

"Appellant contends that the indictment charges that he bet at a game played with dice, commonly called 'craps,' not at a private residence, and that the entire testimony shows that the game at which he bet was a banking game, and not a game played between himself and some other person, and that consequently the indictment in this case is not sustained by the proof. The contention is that, as the proof showed that the game played with dice at which appellant bet was a banking game or table, therefore he could not be convicted for betting at a game played with dice, commonly known as 'craps;' that he should have been indicted for betting at a banking game or table. It is not questioned, and the record renders it conclusive, that appellant did bet at a game played with dice, to wit, craps. Now, the contention is that he should have been indicted and tried for betting at a banking game or table. This contention is not sound. Every fact charged in the indictment was proved in this case, that is, that he bet at a game played with dice, commonly known as 'craps,' not at a private residence. This is an offense, and made so by the express provisions of the statute. He will not be heard to complain that the State did not prosecute him for betting at a banking game or table. With this he has nothing to do, and no concern; for, if the State should attempt to prosecute him for betting at a banking game or table, he could interpose an acquittal or conviction as charged in this indictment. The State had the right to proceed against him for betting at the game played with dice, commonly called 'craps,' or the right to proceed against him for betting at a banking game or table. Having elected, the State is concluded." And also: "To condense: Whether a banking game or table or not, if he bets at a game played with dice, commonly called 'craps,' not at a private residence, he is guilty, and will not be heard to urge that he should have been indicted for betting at a banking game, if the proof suggests such. As stated before, it being for the same transaction, when he has been convicted or acquitted, he can set up former conviction or acquittal in bar of a prosecution for either as the case may be."

So, in this case, even though the evidence might have tended to show that the appellant was guilty under the third count in the indictment, it does not show that he was not guilty under the second count and the State, having elected under the second, is bound by its election to the disadvantage of the State and to the advantage of the appellant. Again, by article 723 of the Code of Criminal Procedure, it unquestionably appearing to this court that the error, if any, of the lower court was not calculated to injure the rights of the appellant, but inured to his advantage, there was no error by the lower court in the State electing to seek and secure the conviction

under the second count. Article 723, Code Crim. Proc.; Thompson v. State, 37 Texas Crim. Rep., 227; Martinez v. State, 51 Texas Crim. Rep., 584.

The motion for rehearing is therefore overruled.

*Overruled.*